UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK


| | | |
|---|---|---|
| AMY FAGAN, | ) | No. 1:24-cv-00813-JGK |
| | ) | |
|     Plaintiff, | ) | FIRST AMENDED |
| | ) | COMPLAINT FOR MONETARY |
| v. | ) | AND INJUNCTIVE RELIEF; |
| | ) | DEMAND FOR TRIAL BY |
| INSTITUTE OF CULINARY | ) | JURY |
| EDUCATION, INC., | ) | _____ |
| | ) | |
| | ) | |
|     Defendant. | ) | |
| _____ | ) | |


## I.

## <u>INTRODUCTION</u>


1.      This action seeks monetary and injunctive relief against defendant the

Institute of Culinary Education, Inc. (hereinafter, "Defendant" or "ICE") for, among

other things, intentional infliction of emotional distress and discrimination based on

disability in a place of public accommodation in violation of Section 504 of the

Rehabilitation Act of 1973, and related state laws.

## II.

## JURISDICTION AND VENUE

2.      Jurisdiction and venue are proper in that the claims alleged herein arose

within the City of New York, New York County, New York.

## III.

## PARTIES

3.      Plaintiff Amy Fagan is an Illinois resident who suffers from a learning

disability, which substantially limits her ability to, among other things, concentrate,

think, and work.

4.      Defendant The Institute of Culinary Education, Inc., is, and was at all

relevant times, a New York corporation and the owner and operator of the Institute of

Culinary Education in New York City.

5.      At all relevant times, Defendant was approved by the federal government

for participation in Title IV financial aid programs, including Pell Grants, Federal

Subsidized and Federal Unsubsidized Direct Loans and Federal Parent Plus Loans and

received federal funding from said financial aid programs.

6.     At all relevant times, Defendant was engaged in the business of providing

education to members of the public.

## IV.

## FACTS

7.     Defendant, acting independently and in concert with others, directly and

through agents, engaged in a pattern or practice of discrimination against

handicap/disabled persons, including Plaintiff, on account of handicap/disability in the

operation of the Institute of Culinary Education, which is a public accommodation.

8.     In or around fall 2022, Plaintiff Amy Fagan enrolled in and was accepted

into Defendant's ten-week intensive sommelier training program at the Institute for

Culinary Education in New York City.  The program was not an accredited program

and Ms. Fagan was not seeking a degree from Defendant.  Defendant advertised the

program as being taught by members of the prestigious Court of Master of Sommeliers.

At the time, Ms. Fagan was living in Illinois and planned to temporarily move to New York City to enroll in the program in hopes of becoming a certified sommelier by the Court of Master Sommeliers.  The approximately $10,000 course was not listed online as being graded.

9.    After classes began, the students were tested on material covered in class, so that they were prepared for the certified sommelier examination, which was to be administered by the Court of Master Sommeliers after the completion of Defendant's ten-week program. The two entities had a working relationship.  Students were led to believe that in order to be able to take the certified sommelier examination, students had to first complete Defendant's ten-week program.

10.    Ms. Fagan was treated differently by Defendant's employees and/or agent from other students because of her learning disability after the students took the first test on Foundation Theory on October 14, 2022.

11.    On or about October 17, 2022, Elliott Prag, Defendant's Dean of Student Affairs and Director of Career Services, emailed Ms. Fagan informing her that her score on the Foundation Theory exam was not high enough for her to pass the Wine

Foundations module.  He informed her that she would be permitted to re-take the exam either before or after class by Wednesday, October 19, 2022.

12.    Later that same day, October 17, 2022, Dean Prag emailed Ms. Fagan a second time.  This time Dean Prag stated that Ms. Fagan should disregard the prior email.  And, instead, he indicated that he would like to speak with Ms. Fagan one-on-one about what contributed to her exam results.  Dean Prag went on to say that a determination whether the result was lack of time to study, difficulty of the material, or some other factor would help them determine when she should retake the exam and what her instructor and Dean Prag could do to ensure she was appropriately supported in her studies.

13.    The following day, on or about October 18, 2022, Ms. Fagan was standing just outside of the classroom speaking with a classmate before class when Dean Prag walked up in an intimidating manner and said, "I need to speak with you."  Without introducing himself, he pulled Ms. Fagan aside directly in front of the classroom and into the adjoining hallway and spoke to her for approximately 15-20 minutes.   He did not take her to a private location.  The classroom was about half full at that time.  "Oh, let me introduce myself.  Why do you think you failed this test?" said Dean Prag.  Ms.

Fagan told him that she had a learning disability. "Well, did you study hard enough? If you would have studied hard enough, then you would have passed the test" Dean Prag replied. Ms. Fagan attempted to explain her learning disability to him. But Dean Prag continued, "If you don't get above 70%, then you will fail the class. If you fail this test, then there is no way for you to pass the course." Ms. Fagan asked about accommodations. "This class isn't really built for people like you," said Dean Prag. Ms. Fagan was shocked. From Ms. Fagan's perspective, Dean Prag was trying to bully her out of the program. Dean Prag kept insinuating that Ms. Fagan wasn't good enough to make it through the course. "There is no shame in dropping the course. You have until [a date certain] to get more money back. You might as well get your money back. A couple other people have dropped out of the class. There is no shame. It is 100% an option." Ms. Fagan responded that that was not an option. She refused to just give up. "It just increases in intensity," said Dean Prag. "If you have to constantly retake tests, then it is going to put you further and further behind." Dean Prag continued, "We have a policy that only permits you to retake an exam twice." Dean Prag then told her that she may have to go to night class, which makes it even harder. He kept on pushing and pushing that it was going to get harder and harder. Ms. Fagan felt bullied because it was done in front of her peers. She felt like a spectacle. Dean Prag made her feel like she wasn't good enough. Ms. Fagan could feel the pressure to quit now. Ms. Fagan

told him that the goal was to become certified. "Well, that's everyone's goal, but not all goals are met," said Dean Prag in a demeaning manner. "I'm offering you the easy way out," said Dean Prag. "I'm not looking for the easy way out," replied Ms. Fagan. When Ms. Fagan did not instantly agree to quit the program, he told her that she would have one last chance to retake the exam and that if she did not score 70%, then she would be immediately dropped from the program. Dean Prag did not offer any sort of accommodation. "Where will it be taken?" asked Ms. Fagan. "Oh, I will email you the details, but it has to be taken by the 19th." On that day, October 18, the students had an important day ahead in class where they were going to be studying through the Louire Valley of France. "The next one is France, by the way, so if you are already struggling with this, then it only gets harder," said Dean Prag. Ms. Fagan was flustered. "France is the hardest by far, so don't be hard on yourself," added Dean Prag.

14.    Ms. Fagan was shocked by Dean Prag's actions and felt humiliated and embarrassed and had difficulty concentrating in class that day. On that day, the students had a guest speaker. The whole time Ms. Fagan was mentally off that day. She took only a page worth of notes. Normally, she would take about five pages of notes per day. Ms. Fagan still struggles with French wines to this day. She remembers the tasting portion of the class and that she couldn't tell a wine was a Sauvignon Blanc,

which was something very simple.  The guest speaker kindly said, "If we are struggling a little, then just pass it to the next person."

15.     A fellow student, Caroline Buck, overheard the conversation between Dean Prag and Ms. Fagan because she was walking into the class, so she subsequently informed her student advisor, Joe Doe, about the conversation, for she felt like Dean Prag was bullying Ms. Fagan.  Ms. Buck's mom is a special education teacher, so Ms. Buck couldn't believe that Dean Prag was being so unprofessional.  Although she only heard a portion of the conversation, she felt that she had heard enough that she felt like she should say something, for what she heard was inappropriate.  She also saw how upset Ms. Fagan was and told Ms. Fagan, "No one should feel like they aren't good enough to do the course."

16.     On or about October 18, 2022, Dean Prag also spoke to another student, Brian Doe.  Brian Doe, too, had not done well on the first examination.  After Dean Prag spoke to Brian Doe, he attended the first class on the wines of France.  Brian Doe was in his early 20s.  Ms. Fagan observed that the life had been drained out of Brian Doe as a result of his conversation with Dean Prag. As such, Ms. Fagan tried to encourage him.  "Well, I got pulled aside and talked to, and it was not a good

experience," said Brian Doe.  After that classroom session, Brian Doe never returned.

17.    On or about October 18, 2022, Ms. Fagan emailed Dean Prag and, among other things, formally requested a reasonable accommodation in the form of double time for tests and examinations.  Dean Prag thereafter agreed to the request for the retaking of the first exam, but, going forward, he stated that if she should require accommodations for exams, then she should contact Lisa Preti, Assistant Dean of Students.

18.    On or about October 19, 2022, Ms. Fagan asked her instructor, Scott Carney, how to get a reasonable accommodation.  Carney recommended that she speak to a different administrator from Dean Prag.  He recommended that she speak with Assistant Dean Lisa Preti.  "She is a lot softer," said Carney.  He also told Ms. Fagan that she would be retaking the exam with another chef in a separate room.  Dean Prag had been pushing that the examination be done by Wednesday, but Ms. Fagan asked to retake the exam on the upcoming Monday, so that she could further study over the weekend.  Carney agreed with the Monday retake and asked if she needed anything other than double time.  He also told her to contact the Court of Master Sommeliers for the final exam.  Carney was very kind and nice about it.  "This is completely doable.

It's going to take a little more work, but you can do it," said Carney. "It takes a lot of studying," he added. Carney made sure that Ms. Fagan was set up with Guildsome, which is an online program devoted to wine education. Carney also recommended that she purchase a certain wine book with all the maps of the various wine regions.

19.     On or about October 19, 2022, Caroline's student advisor, Joe Doe, spoke with Ms. Fagan after class. He asked what had happened with Dean Prag. Ms. Fagan told him what happened. Thereafter, he helped setting up an accommodation. He said that they worked hand-in-hand with the Court of Master Sommeliers. He told her that the ultimate goal was to prepare her to pass the Master Sommelier's examination. He told her that he had sent an email to Adrian, Ms. Fagan's student advisor. He expressed disbelief over Dean Prag's actions for claiming that, "Oh, this class isn't really made for you." "Oh, it's made for everyone! You may have to put work into it. It just takes extra work. It has the word 'intense' for a reason. You have what you need the most: a support group." He was very kind and encouraging. "Look at the size of your binder that you bring to class every day," said Joe Doe, noting that Ms. Fagan was well prepared.

20.     But even after asking for reasonable accommodations, Defendant's

employees and/or agents continued to harass and mistreat Ms. Fagan because of her

learning disability. To wit, on almost a daily basis beginning in late October 2022,

Defendant's employees and/or agents approached Ms. Fagan at school wanting "to

talk" about her grades and regularly threatened to drop her from the program.   Ms.

Fagan ended up not scoring a passing grade on either the makeup examination or the

wines of France examination and this only fueled the Defendant's push to get her to

drop out of the program.


21.     On or about November 9, 2022, Ms. Fagan was scheduled to take an exam

that morning on the wines of Australia, New Zealand, Chile, Argentina, South Africa,

Northern, Central, and Southern California, Washington, Oregon, and Canada.  But

Assistant Dean Preti scheduled a meeting with Ms. Fagan before the test to talk with

her about retaking her examination on the wines of France.  During the meeting,

Assistant Dean Preti informed Ms. Fagan that she either had to simultaneously attend

the night course from 6-10 p.m. and the day course from 10 a.m. to 2 p.m. or she had to

transfer over to the night course.  If she did not select one of the two options, then she

would be dismissed from the course.  Ms. Fagan reminded her that she was not taking

the class for any academic credit and that the program she had signed up for said

nothing about needing to pass exams. Nevertheless, Defendant insisted that Ms. Fagan had to retake exams if she did not score high enough on the initial exam. And if she did not, then she would not pass the course. Ms. Fagan knew that she needed to complete the course to be entitled to take the certified sommelier examination with the Court of Master Sommeliers, for part of her fees included the approximate $700 fee to take the certified sommelier examination with the Court of Master Sommeliers. So Ms. Fagan was being forced to re-take exams even as she was preparing for multiple, additional exams in the intensive course. While the day course finished on December 15, 2022, the night course, which met less frequently, did not finish until March 13, 2023. Assistant Dean Preti was aware that Ms. Fagan was not from New York and was only living temporarily in New York City for the purposes of attending the ten-week day course. As such, Preti's suggestion that Ms. Fagan switch over to the night course was not a viable option.

22.     Later that evening, after Ms. Fagan emailed Preti to confirm their conversation, Assistant Dean Preti emailed her back to confirm the conversation, but also added that she would like to "continue our conversation regarding your testing accommodation so we can make sure we follow through." Assistant Dean Lisa Preti then asked Ms. Fagan to produce her California assessment from 2017 and to let her

know what she was thinking.

23.    On or about November 9, 2022, Ms. Fagan again asked for a reasonable accommodation in the form of additional time for exams and to take them orally.  In response, Assistant Dean Lisa Preti stated that Ms. Fagan would need to complete their accommodation forms.  Thereafter, Defendant failed to fully grant her request for a reasonable accommodation, for Ms. Fagan was not permitted additional time for the wine tasting portion of the examinations.

24.    On or about November 15, 2022, Assistant Dean Lisa Preti, for the first time, informed Ms. Fagan that she needed to earn a cumulative 2.0 GPA to receive her certificate of completion for the program.  This was the first time that Ms. Fagan had ever been told that there was a mandatory GPA needed to receive a certificate of completion for the program.  Assistant Dean Preti informed Ms. Fagan that her then GPA was 0.9.

25.    Throughout the fall, Defendant's employees and/or agents attempted to bully Ms. Fagan into quitting the course because she allegedly wasn't meeting up to the school's standards.  But the Defendant's website stated, "The class will culminate . .

. with a final exam comprising a theory paper and blind tasting." Defendant's website said absolutely nothing about examinations for this unaccredited program. Moreover, nothing was mentioned about necessary percentages to pass or earn a certificate of completion. And nothing in Ms. Fagan's syllabus stated anything about needing a specified GPA to be permitted to graduate.

26.    Because Ms. Fagan had requested a reasonable accommodation in the form of additional time for exams, Defendant excluded Ms. Fagan from taking exams with her fellow classmates. As a result, Ms. Fagan was denied the opportunity to participate in or benefit from class discussions that took place immediately before and after the students took their exams. Moreover, due to Defendant's insistence that Ms. Fagan repeatedly retake examinations, Defendant also excluded Ms. Fagan, on the basis of her disability, from participating in class discussions that took place when students were informed of their grades.

27.    What is more, Defendant's insistence that Ms. Fagan repeatedly retake examinations resulted in Ms. Fagan being denied the opportunity to participate in or benefit from the class without the burden of having to repeatedly study for multiple examinations at once. On information and belief, Plaintiff alleges that Defendant took

such actions because of her disability and in retaliation because she refused to drop out of the class.

28.    On or about November 30, 2022, Assistant Dean Lisa Preti emailed Ms. Fagan to tell her that her grades for the exams on the wines of Italy was 49% and for the wines of Iberia was 54%. Assistant Dean Preti continued to state that Ms. Fagan could retake the theory portion of the exams to obtain a passing score for the course. Eventually, Ms. Fagan proposed to retake the exams on Monday, December 12, 2022, but was unable to do so. As such, Assistant Dean Preti proposed that Ms. Fagan retake the exams after her final day of class on December 14, 2022. Ms. Fagan eventually took both exams before the final class. Ms. Fagan took both reexaminations because she feared that if she failed to do so, then Defendant would forbid her from taking the certified sommelier examination with the Court of Master Sommeliers, which was being held at Defendant's New York campus.

29.    Assistant Dean Lisa Preti, who typically administered the exams to Ms. Fagan, always intentionally showed Ms. Fagan her failing score from the prior exam immediately before she would allow Ms. Fagan to take the new test, which caused undue anxiety to Ms. Fagan.   Preti also insisted on each occasion that Ms. Fagan had to

reschedule additional make-up exams for the failed exams, even after Ms. Fagan had

informed her in or around December 2022 that she was not going to take any more

make-up exams, for Ms. Fagan was overwhelmed with her studies because of having to

take exams and makeup exams and to be ready for the certified sommelier examination

with the Court of Master Sommeliers.


30.    On or about December 15, 2022, Defendant's ten-week course finished

and graduation was held.  On the basis of her disability, Ms. Fagan was not afforded the

opportunity to participate in the privilege that was afforded to other students to

participate in graduation ceremonies, for she allegedly had not passed the course.  Ms.

Fagan was saddened, humiliated, and embarrassed by not being able to participate in

the graduation ceremonies with her fellow classmates.


31.    On or about December 17, 2022, Ms. Fagan was able to take the certified

sommelier examination with the Court of Master Sommeliers, but could feel the weight

of all that had happened to her during the ten-week course.  For the examination was

held at Defendant's New York City campus where the ten-week course had been held.

Although she passed the level one examination, she did not pass the level two

examination, which would have certified her as a sommelier.

32.    Three days before Christmas, on or about December 22, 2023, and shortly after Ms. Fagan had moved back to Illinois from New York, Assistant Dean Lisa Preti emailed Ms. Fagan stating, among other things, that at the conclusion of her Intensive Sommelier Training Program she had received an overall GPA of 1.0.  Preti further stated that in order for Ms. Fagan to receive her certificate of completion she had to achieve a 2.0 GPA or higher and successfully pass each course.  Assistant Dean Preti went on to inform Ms. Fagan that a student who does not initially receive a 2.0 GPA has the option to formally withdraw from the program and reinstate with another cohort, to retake the courses they did not pass, in an effort to achieve an overall GPA of 2.0 and passing grades for each course.  Preti stated that in order for Ms. Fagan to achieve a 2.0 GPA, she would have to earn a 2.67 GPA or higher in each previously-failed course.  Preti told Ms. Fagan that Defendant had another Intensive Sommelier Training Program beginning on January 9, 2023.  She stated that classes on the wines of Italy began on February 16, 2023.  Preti threatened that if Ms. Fagan did not wish to redo wines of Italy, wines of the Iberian Region, and the Wine Program Management, then Defendant would process a formal dismissal from the program, which had finished on December 15, 2022.  Since Ms. Fagan had finished the course and already moved back to Illinois, she was not planning to re-take the course.

33.     On or about January 18, 2023, Preti again emailed Ms. Fagan to inform her that now she was being dismissed from the Institute of Culinary Education for failing to successfully complete the Intensive Sommelier Training Program.  Preti indicated that she had notified the Office of Student Affairs of Ms. Fagan's failure.

34.     On information and belief, Plaintiff contends that Defendant took the above-referenced actions against Ms. Fagan in retaliation for her asking for a reasonable accommodation.  Ms. Fagan was harmed by Defendant's actions.

## V.

## INJURIES

35.     By reason of Defendant's unlawful acts and practices, Plaintiff has suffered violation of her civil rights, emotional distress, including humiliation, embarrassment, mental anguish, sleep loss, appetite loss, and otherwise sustained injury. Accordingly, Plaintiff is entitled to compensatory damages.

36.    Plaintiff alleges that Defendant's conduct was intentional, willful, and/or taken in reckless disregard of the rights of others.  Accordingly, Plaintiff is entitled to punitive damages.

## VI.

## FIRST CLAIM

## (Section 504 of the Rehabilitation Act)

37.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

38.    Defendant injured Plaintiff by committing discriminatory practices in violation of the Rehabilitation Act of 1973, Pub. L. 93 112, as amended by the Rehabilitation Act Amendments of 1974, Pub. L. 93 516, 29 U.S.C. §794.

## SECOND CLAIM

## (Intentional Infliction of Emotional Distress)

39.    Plaintiff realleges and incorporates by reference each paragraph previously

alleged in this complaint.

40.     Defendant injured Plaintiff by committing extreme and outrageous conduct, which was done intentionally, or with disregard for the very high risk of causing severe emotional distress.

41.     Plaintiff suffered actual emotional distress as a result of Defendant's conduct.

## THIRD CLAIM

### (Negligence)

42.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

43.     Defendant owed Plaintiff a duty to operate a school in a manner that was free from unlawful discrimination, and to hire, train, supervise, and discipline its employees and itself to fulfill that duty.  Defendant violated its duties by discriminating against handicap/disabled persons.  Defendant's violations of its duties was the result of negligence, including, but not limited to:

A.    Defendant's negligent failure to hire persons who were familiar with the requirements of state and federal disability laws;

B.    Defendant's negligent failure to train its employees and itself regarding the requirements of state and federal disability laws;

C.    Defendant's negligent failure to supervise their employees regarding compliance with the requirements of state and federal disability laws; and

D.    Defendant's negligent failure to discipline or terminate employees who failed to comply with the requirements of state and federal disability laws.

44.    As a legal result of Defendant's negligent conduct, Plaintiff has suffered bodily and personal injury.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Amy Fagan prays for entry of judgment against Defendant The Institute of Culinary Education, Inc., that:

1.    Awards compensatory and punitive damages according to proof;

2.      Enjoins all unlawful practices complained about herein and imposes affirmative injunctive relief requiring Defendant, its partners, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to provide equal opportunities to all students regardless of handicap/disability and to ensure the full enjoyment of the rights described in Section 504 of the Rehabilitation Act of 1973;

3.      Awards pre-judgment interest and post-judgment interest as provided for by law;

4.      Awards costs of suit herein incurred, including reasonable attorney's fees; and

5.      Awards all such other and further relief as the court may deem proper.

Dated: April 3, 2024

> By: /s/ Stuart E. Fagan
> Stuart E. Fagan, *Pro Hac Vice Granted*
> LAW OFFICES OF STUART E. FAGAN
> P.O. Box 365
> Wheaton, IL 60187
> Telephone: (858) 220-9601
> Email: sfagan@sfaganlaw.com

## VIII.

## <u>JURY DEMAND</u>

Plaintiff Amy Fagan hereby requests a trial by jury.


Dated: April 3, 2024


By: <u>/s/ Stuart E. Fagan</u>
Stuart E. Fagan, *Pro Hac Vice Granted*
LAW OFFICES OF STUART E. FAGAN
P.O. Box 365
Wheaton, IL 60187
Telephone: (858) 220-9601
Email: sfagan@sfaganlaw.com